IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AARON ROGERS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PWG-19-1467 |
| HOWARD COUNTY, JACK KAVANAGH, BYUNG MOON, STEPHEN HENNESSEY, and LEVI PHELPS, | * * * | |
| Defendants.[1] | * | |

***

## MEMORANDUM OPINION

Plaintiff Aaron Rogers, who is representing himself in this suit, brings this civil action pursuant to 42 U.S.C. § 1983 against Howard County, Maryland; Jack Kavanagh, the Director of the Howard County Department of Corrections; Police Officer First Class Byung Moon; Police Officer First Class Stephen Hennessey; and Police Officer Levi Phelps.[2]  ECF No. 1.  Plaintiff asserts a violation of his constitutional rights arising from his "arbitrary arrest and detention" and his pretrial detention in the Howard County Detention Center ("HCDC").  *Id.* at 8-10, 17-18.  He seeks declaratory and injunctive relief, as well as monetary damages.  *Id.* at 19-22.

On September 16, 2019, Defendants filed a Motion to Dismiss.  ECF No. 29.  Thereafter, Plaintiff filed two Motions to Appoint Counsel (ECF Nos. 33, 35), and an opposition to

---

[1] The Clerk shall amend the docket to reflect the full names of Defendants Moon, Hennessey, and Phelps.

[2] Plaintiff also brought suit against the State of Maryland; Danielle M. Duclaux, a Howard County prosecutor; K. Sciandra, a District Court Commissioner; and an unknown Howard County District Court judge, all of whom were dismissed on July 8, 2019.  ECF No. 6.

Defendants' Motion, which he titled "Motion to Strike Defendants['] Motion to Dismiss" (ECF No. 36). Defendants replied. ECF No. 38.

A hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, Defendants' Motion to Dismiss shall be granted and Plaintiff's motions shall be denied.

## Background

Plaintiff claims that at approximately 3 a.m. on March 3, 2019, he was walking on Washington Boulevard when a uniformed individual, later identified as Officer Moon, came out of a vehicle shining a bright light, "accosted" him, and directed him to stop. Complaint at 8, ECF No. 1.[3] After Plaintiff asked why he was stopped, he was told that he fit the description of a suspect in a crime. *Id.* At that time, another vehicle approached. *Id.* Its driver, later identified as Officer Hennessey, exited, grabbed Plaintiff's arm, threw him to the ground, and handcuffed him. *Id.* Plaintiff remained on the ground for approximately five minutes before he was searched. *Id.* at 8-9. His wallet and two cell phones were seized. *Id.*

Plaintiff was transported to Howard County Central Booking ("HCCB") but was redirected to Howard County General Hospital at around 4:50 a.m. because he had visible injuries. *Id.* at 9. Plaintiff was taken to the emergency room, where he was diagnosed with minimally displaced fractures of the right nasal bone, the right anterior nasal spine, and right facial injury. *Id.* While in the hospital, Officers Moon and Hennessey seized two jackets and a coat from Plaintiff.

Plaintiff was transported back to HCCB at about 6:10 a.m. *Id.* at 9-10. His clothes were seized, and he was given a Howard County Department of Corrections jumper. *Id.* at 10. Plaintiff was then handcuffed to a bench, where Officer Phelps "accosted [him] in regards to his birth date

---

[3] All references to exhibits reflect their electronic pagination.

and residence . . . ." *Id.*  Plaintiff states that while awaiting trial, he was placed in HCDC unit B, cell 9 "with convicted persons who are serving or who are awaiting sentences."[4]  *Id.* at 17.

Plaintiff attached several exhibits to his Complaint, including Officer Phelps's Statement of Probable Cause for arrest.  ECF No. 1-1.  Officer Phelps stated that at 2:43 a.m. on March 3, 2019, he was dispatched to an abandoned house on Washington Boulevard (the same road where Plaintiff first was encountered by Officer Moon) to investigate a stabbing.  *Id.* at 3.  He saw a woman with multiple stab wounds to the chest who was being transported to shock trauma.  *Id.*  Officer Phelps spoke to three witnesses and determined that the suspect had a verbal altercation with the woman.  *Id.*  The woman pushed the suspect, who attacked the woman in return, and the woman struck the suspect near the eye with an object.  *Id.* at 3-4.  The suspect then attacked the woman for approximately two minutes until a witness separated them and instructed the woman to run.  *Id.* at 4.  According to the witness, the suspect chased the woman and stabbed her in the chest multiple times.  *Id.*  Officer Phelps announced a description for the suspect, and Officer Moon identified Plaintiff as a possible match.  *Id.*  Subsequently, the witness who told the woman to run identified Plaintiff as the person who stabbed the woman.  *Id*

## Motion to Appoint Counsel

Prior to filing his opposition to Defendants' dispositive motion, Plaintiff twice filed a Motion to Appoint Counsel.  ECF Nos. 33, 35.  The Court may, pursuant to 28 U.S.C. § 1915(e)(1) (2012), appoint an attorney to represent any person "proceeding in forma pauperis who is "unable to afford counsel."  In civil actions, however, the Court appoints counsel only in exceptional circumstances.  *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975).  In doing so, the Court considers "the type and complexity of the case," whether the plaintiff has a colorable claim, and

---

[4] On or about October 28, 2019, Plaintiff was released from HCDC.  Correspondence, ECF No. 37.

the plaintiff's ability to prosecute the claim. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984) (internal citations omitted), *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989). Exceptional circumstances include a litigant who "is barely able to read or write," *id.* at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008); *see also Altevogt v. Kirwan*, No. WDQ-11-1061, 2012 WL 135283, at *2 (D. Md. Jan. 13, 2012). Inherent in this analysis is that one's indigence (or, for that matter, incarceration) alone is insufficient to establish exceptional circumstances.

Plaintiff claims that he is unable to afford counsel, the issues involved in this case are complex, he has extremely limited access to the law library due to his incarceration, and he has limited knowledge of the law. ECF Nos. 33, 35. After reviewing Plaintiff's filings in this case, the Court finds that he has demonstrated no difficulty in adequately articulating his claims, and, as his case is being dismissed because he has failed to present a colorable claim, his case will not be proceeding to discovery or a hearing, for which the assistance of an attorney would be more justified. For these reasons, appointment of counsel is not warranted.

## Standard of Review

The well-pleaded allegations in Plaintiff's *pro se* Complaint (ECF No. 1) are accepted as true for purposes of resolving Defendant's Motion. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011). Additionally, *pro s*e complaints are "liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

"When reviewing a motion to dismiss, '[t]he court may consider documents attached to the complaint . . . if they are integral to the complaint and their authenticity is not disputed.'" *Fin. Indus. Regulatory Auth., Inc. v. Axis Ins. Co.*, 951 F. Supp. 2d 826, 830 (D. Md. 2013) (quoting *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); citing *CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009) and Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.")); *accord Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). "Moreover, where the allegations in the complaint conflict with an attached written instrument, 'the exhibit prevails.'" *Axis Ins. Co.*, 951 F. Supp. 2d at 830 (quoting *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)). A federal court may also "take judicial notice of documents from prior state court proceedings and other matters of public record in conjunction with a Rule 12(b)(6) motion to dismiss without converting it into a motion for summary judgment." *Sposato*, No. CCB-12-1569, 2013 WL 1308582, at *2 (citing *Philips*, 572 F.3d at 180). In this regard, the Defendants' motion to dismiss attached various public records relating to the Plaintiff's criminal charges, which are integral to the allegations of the complaint and the authenticity of which are not contested by Plaintiff. Accordingly, I take judicial notice of them, Fed. R. Evid. 201(b)(2) and (c).

**Analysis**

Defendants move for dismissal of the claims against them, asserting that: (1) Plaintiff has not alleged facts sufficient to show that the purported constitutional violations were directly caused by an official policy or custom of Howard County; (2) Kavanagh is not liable under a theory of respondeat superior; (3) Plaintiff fails to state a constitutional claim based on his conditions of confinement; and (4) Plaintiff fails to state cognizable claims against Officers Moon, Hennessey, and Phelps. ECF No. 29-1.

At the time of the incident giving rise to this case, Plaintiff was a pretrial detainee in Howard County, Maryland. Accordingly, his claims are analyzed under the Fourteenth Amendment. *See Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001); *Hill v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992). "The constitutional protections afforded a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment." *Barnes v. Wilson*, 110 F.Supp.3d 624, 629 (D. Md. 2015) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).

**A.     Claims against Howard County and Kavanagh**

Plaintiff claims that while he was imprisoned at HCDC, Defendants "imposed policy rules and regulations that restricts, prevents and deters [sic] the full and free exercise and enjoyment of human, civil and constitutional rights by means of force, intimidation, coercion, isolation and segregation." ECF No. 1 at 17. Plaintiff also contends that "the conditions at HCDC severely limits or disables [his] exposure to the outside world, diminishes and places a substantial burden on his everyday life activities, family relations, social contacts, work options, economic independence, educational advancement and cultural enrichment." *Id.* at 17-18. He claims that he was excluded from participation in certain programs, services, and activities, both social and

"spiritual," and he was held in depressive and oppressive conditions although he was still awaiting trial. *Id.* at 18. Lastly, he alleges that he was "deprived and disabled from exercising and enjoying his birth right of citizenship." *Id.*

Section 1983 provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *Wahi v. Charleston Area Med. Ctr.*, 562 F.3d 599, 615 (4th Cir. 2009). To state a claim under § 1983, two elements are essential: (1) that plaintiff suffered a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the United States; and (2) the act or omission causing the deprivation was committed by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

For pretrial detainees, confinement conditions are evaluated under the Due Process Clause rather than under the Eighth Amendment. *Ray v. Koppel*, Civil Action No. DKC 13-3480, 2015 WL 5136803, at *6 (D. Md. Aug. 31, 2015) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Hill v. Nicodemus*, 979 F.2d 987, 990 (4th Cir.1992)) (footnote omitted).[5] Detainees must prove that their confinement amounts to constitutionally impermissible "punishment"[6] by showing

---

[5] Also noting that "[a]s a practical matter, however, courts do not distinguish between the Eighth and Fourteenth Amendments in the context of a pre-trial detainee's Section 1983 claim on these issues. 2015 WL 5136803, at *6, n.5 (citations omitted).

[6] "The due process rights of a pretrial detainee are at least as great as the eighth amendment protections available to the convicted prisoner; while the convicted prisoner is entitled to protection only against punishment that is 'cruel and unusual,' the pretrial detainee, who has yet to be adjudicated guilty of any crime, may not be subjected to *any* form of 'punishment.'" *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988).

"either (1) an expressed intent to punish or (2) a lack of a reasonable relationship to a legitimate governmental non-punitive purpose." *Id.* (citing *Wolfish*, 441 U.S. at 538; *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988); *Nelson v. Collins*, 659 F.2d 420, 425 (4th Cir. 1981)). Moreover, "the detainee must show he suffered an actual injury from the conditions at issue." *Id.* (citing *Strickler v. Waters*, 989 F.2d 1375, 1382 (4th Cir.1993)).

Here, Plaintiff alleges in conclusory fashion only that he was detained at HCDC, away from the outside world, and without access to certain programs and services. He has not asserted any facts to specify what programs or services he was unable to attend or whether they were constitutionally protected. "[T]he law is well settled that a prisoner has no constitutional right to participate in an educational or rehabilitative program." *Ray*, 2015 WL 5136803, at *6. He also does not allege that any of the conditions about which he complains were individually-imposed restrictions as opposed to shared conditions of confinement. *See Williamson v. Stirling*, 912 F.3d 154, 174-75 (4th Cir. 2018) (noting that "'regulatory restraints' include administrative and disciplinary measures used by responsible jail officials to maintain security and order in detention facilities." (citation omitted)). Further, Plaintiff fails to allege that Defendants intended to punish him, that the conditions of his confinement were not related to a legitimate governmental non-punitive purpose, or that he suffered any injuries from the complained-of conditions.

I agree with the Defendants that the conditions Plaintiff describes are of the type inherently imposed by pretrial detention or imprisonment in general, and, more fundamentally, fail to demonstrate the deprivations or restrictions required to constitute punishment. Therefore, Plaintiff fails to state a claim against Howard County and Kavanagh.[7]

---

[7] In light of the Court's ruling, it is not necessary to address Defendants' remaining arguments as to Howard County and Kavanagh.

**B.     Claims against Officers Moon, Hennessey, and Phelps**

Plaintiff claims that at the time of his seizure, Officers Moon and Hennessey "lacked an objectively reasonable basis and probable cause for believing that [he] committed or attempted to commit a felony" and therefore, his warrantless search and seizure were not justified under Maryland law. ECF No. 1 at 10. Plaintiff also alleges that Officer Phelps violated his constitutional rights by filing criminal charges that were not supported by probable cause. *Id.* at 11-12, 19.

The Fourth Amendment protects citizens from unreasonable searches and seizures. *See Terry v. Ohio*, 392 U.S. 1, 8 (1968); *United States v. Kehoe*, 893 F.3d 232, 237 (4th Cir. 2018). A reasonable suspicion of criminal activity justifies police officers executing an investigative stop. *Terry*, 392 U.S. at 8; *Kehoe*, 893 F.3d at 237. In determining whether there was reasonable suspicion, the court must look at the totality of the circumstances. *United States v. Brugal*, 209 F.3d 353, 359 (4th Cir. 2000) (citing *United States v. Sokolow*, 490 U.S. 1, 8 (1989)); *see also Kehoe*, 893 F.3d at 237.

In order to state a claim under § 1983 for false arrest, Plaintiff must show that his arrest was made without probable cause. *See Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002); *Street v. Surdyka*, 492 F.2d 368, 372-73 (4th Cir. 1974). Probable cause exists if "at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *accord Santos v. Frederick Cty Bd. of Comm'rs*, 725 F.3d 451, 466 (4th Cir. 2013); *see also Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017).

Here, Plaintiff states that when he asked Officer Moon why he was stopped on Washington Boulevard he was told that he fit the description of a suspect in a crime. This is consistent with Officer Phelps's Statement of Probable Cause, which Plaintiff included as an exhibit to his pleading. According to Officer Phelps, an individual matching Plaintiff's description was reported to have attacked and stabbed a woman at an abandoned house on Washington Boulevard. Minutes later, Officer Moon identified Plaintiff as a possible match and stopped him. Subsequently, a witness identified Plaintiff as the individual who stabbed the woman. Moreover, as noted by the Defendants' Reply, the Plaintiff ultimately entered a nolo contendere plea to assaulting the victim identified in the charges brought against him, which further corroborates that there was probable cause to sustain the charges brought against him. *See* ECF No. 38 at 2 (citing *Walker v. Schaeffer*, 854 F.2d 138, 143 (6th Cir. 1988) (permitting use of nolo contendere plea as defense to claim that police officer defendants did not have probable cause of his arrest because such a use "does not present the kind of situation contemplated by Rule 410: the use of a nolo contendere plea against the pleader in a subsequent civil action in which he is the *defendant*" (emphasis in original)). Based on this information, Plaintiff fails to show that the Defendant Officers did not have reasonable suspicion to justify his search and seizure, or probable cause for filing criminal charges.

Plaintiff's subsequent indictment on four criminal counts arising out of the incident for which he was arrested also demonstrates the existence of probable cause to support both the warrantless arrest and the filing of criminal charges. *Durham v. Horner*, 690 F.3d 183, 188-89 (4th Cir. 2012) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975)) ("an indictment, 'fair upon its face,' returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause"); *see also Ghazzaoui v. Anne Arundel Cty.*, 659 F.App'x 731, 733-

34 (4th Cir. 2016) (citing *Zablonsky v. Perkins*, 187 A.2d 314, 316 (1963)); *Quecedo v. DeVries*, 321 A.2d 785 (1984).  For these reasons, Plaintiff's claims must be dismissed.[8]

## Conclusion

Defendants' Motion to Dismiss is granted.  Plaintiff's Motion to Strike Defendants' Motion to Dismiss and his Motions to Appoint Counsel are denied.

A separate Order follows.


__June 24, 2020_____           _____/S/_____
Date           Paul W. Grimm
          United States District Judge

---

[8] In the Complaint, Plaintiff notes that Officers Moon and Hennessey threw him to the ground, and he was later treated for facial injury and nasal fractures.  To the extent Plaintiff alleges excessive force, he also fails to state a claim.  At a minimum, Plaintiff does not aver that the officers caused his injuries.  His exhibit, however, indicates that he was involved in an altercation hours prior, with a woman who struck him with an object near his eye.  *See* ECF No. 1-1 at 3-4.